(6 App. Div. 33.)

O'CONNELL v. CLARK et al.

(Supreme Court, Appellate Division, Second Department. June 2, 1896.)

MASTER AND SERVANT—INJURY TO SERVANT—NEGLIGENCE.

In an action for personal injuries it appeared that plaintiff was assisting in unloading bales of jute from a vessel. His work was to attach a rope to bales in the hold, and as they were hoisted up through the hatch to push them out from under the combing. While a hoist was being made, plaintiff stood under the open hatch, whereupon defendant caught him by the arm, swore at him, and pushed him back. Immediately afterwards a bale behind plaintiff rolled down on him and broke his leg. There was no evidence how far the bale was from plaintiff when it started, or what caused it to fall. Plaintiff was an experienced longshoreman, had unloaded jute before, and had worked on the vessel in question for three weeks. *Held*, that the evidence was not sufficient to charge defendant with negligence.

Appeal from circuit court, Kings county.

Action by James O'Connell against John Clark and another to recover damages for personal injuries. From a judgment entered on a verdict in favor of plaintiff for $10,000, and from an order denying a motion for a new trial, made on the minutes, defendants appeal. Reversed.

Argued before BROWN, P. J., and PRATT, CULLEN, and HATCH, JJ.

Perry D. Trafford and Rufus O. Catlin, for appellants.

Thomas P. Wickes, for respondent.

HATCH, J. This action is between master and servant. The case is somewhat novel in its facts, but the principles which control its disposition have been many times stated. Plaintiff was employed as a longshoreman, and, at the time of the injury complained of, he was engaged in assisting about the removal from a vessel of a cargo of jute, and had been so engaged for about three weeks. His employment called him to remove the bales of jute from the tiers, as they were stowed in the hold of the vessel, and place them in slings, for lifting to the deck above. The bales were about 4 feet long and 18 inches thick. Three or four bales would be placed in a sling, and, when made up, was called a "draft." This draft was lifted by means of steam power to the deck above, and was accomplished by means of a rope with a hook, which was attached to the sling. When the hook was attached, signal to hoist was given. As the draft lifted, plaintiff would swing it from under the combing of the hatch, into the open hatchway, and the bales would be lifted to the deck above. There were several other workmen engaged in the same occupation, at different points in the hold, and each took turn in attaching the hook to the sling, as the drafts were made up. Plaintiff had made up a draft, attached the hook, and, as it was raised from the floor, he stood in front of it, under the open hatch, pulling it out from under the combing; when defendant, who was present, directing the work, caught him by the arm, swore at him, shoved him behind the draft, and, immediately after, a bale, coming from behind, in the hold of the ship, rolled upon plaintiff's leg, and he sustained a compound fracture of the bones, necessitating subsequent amputation of the leg.

The allegations of the complaint were, in substance, that defendant directed plaintiff to go behind the bales, and push the draft out, so that it would swing clear of the combings, and that in obedience to such direction, and without knowledge of danger, he obeyed the order, and suffered the injury; that the place where he was directed to go was a place of danger; and that defendant was guilty of negligence in ordering him to go there, without taking proper precautions to make the place safe. There was no allegation that defendant used any physical force in placing plaintiff in the position where he was injured, or that he committed any assault upon him at any time. At the close of the trial, however, plaintiff was permitted to amend his complaint to conform to the proof. For present purposes, we now regard the pleading as though it contained the al-

legation that defendant took plaintiff by the arm, and shoved him behind the draft. Based upon this proof and the amendment, it is now argued that defendant was guilty of an assault upon plaintiff, and that, in consequence thereof, the former became liable for any injury which plaintiff sustained, whether the defendant had or had not violated any obligation he was under to provide a safe place for plaintiff to work. We do not find it necessary to decide this question in the disposition of this case, as the action is not for an assault, nor were the jury required to find upon that question as a condition of plaintiff's right to recover.

In the colloquy between the court and counsel which followed the close of plaintiff's proof upon this branch of the case, the court said:

"As I understand this case, it is not claimed that the place was not reasonably safe for this man to do his work in, and this has nothing to do with the pulling up of the draft. Is there any claim of negligence except in respect to the witness' claim that he was pushed in this position? Plaintiff's Counsel: That is our claim, and the only claim. The Court: That is that the master failed to fulfill his duty to the servant, but put him in a position where it was not safe for that servant to work, and the master ought to have known it was not safe. That is the proposition as I understand it. Plaintiff's Counsel: That is it; yes, sir. Defendants' Counsel: Then there is no claim as to the machinery being defective or the appliances unsuitable? The Court: No."

It is thus apparent that the issue presented, extracted from the proof, as stated by the court, and agreed to by the counsel, was the failure of obligation upon the part of defendants to provide a safe place for plaintiff to work. This involved the construction of the physical act of defendant as having no other or different relation to the issue than perhaps a mere emphasis of the oral direction to get behind the draft, and tending to some extent to destroy plaintiff's opportunity for voluntary action. It clearly excludes any idea of an assault as a basis of liability. When the application was made to amend, no suggestion of this character and no claim was made that the issue was to be in any respect changed from that stated by the court. And the latter, in the submission of the case to the jury, charged that this was the issue presented for their determination; and plaintiff's counsel took no exception to the charge in this respect, nor did he present any request to charge which sought to raise the question that liability might be predicated as for an injury caused by an assault. The case, therefore, is left for our disposition upon the question whether defendants failed in their duty to provide a reasonably safe place to work, or directed him to go into a place which he knew, or ought to have known, was dangerous.

The plaintiff was an experienced longshoreman, had followed the business for 10 years, and frequently before had unloaded cargoes of jute, and had been at work in this vessel for the three weeks preceding the injury. The place where he was injured, and its condition, were the creation of himself and fellow servants, and usually no liability exists upon the part of the master for an injury received under such circumstances. Collins v. Crimmins, 11 Misc. Rep. 24, 31 N. Y. Supp. 860; Smith v. Transportation Co., 89 Hun, 593, 35 N. Y. Supp. 534. There are some exceptions to this rule,

as where the master gives assurance that the conditions will not be changed during the performance of the labor, or where the master orders the workman into a dangerous place. The rule and its exceptions are found stated in Kranz v. Railroad Co., 123 N. Y. 1, 25 N. E. 206; Cullen v. Norton, 126 N. Y. 1, 26 N. E. 905; Stuber v. McEntee, 142 N. Y. 200, 36 N. E. 878.

Assuming that the exception finds force here, does the proof warrant its application? Defendants insist that there is no proof that the place where plaintiff was pushed or directed to go was in fact unsafe, beyond the happening of the accident. Standing alone, the latter would not be sufficient. It is quite difficult to discover just what the condition was in the rear of plaintiff when he went behind the draft, or from what point or how the bale was dislodged which fell upon him. Counsel for respondent states in his brief: "The place into which plaintiff was thus peremptorily ordered was directly underneath the tiers of bales which were broken out." I am unable to find this statement supported in the folios of the testimony to which he refers for its support, or elsewhere in the case. Plaintiff's testimony in this respect is that, when he was in front of the draft, the bales were in front of him, and, when behind the draft, they were at his back. Sullivan testified that he saw the bale rolling; that it came from the wing in the middle or about forward of where plaintiff was. We have much general testimony as to the dimensions of the space in the hold, the corner where the men worked, and how the work was carried on; but what the condition was in the rear of plaintiff there is no testimony. How far the bales were from his back we have no proof. How high the tier was is not shown. How far away this bale was when it started to roll is indefinite to the last degree, and of what caused it to leave its place there is not a suggestion in plaintiff's case. Defendants claimed that it was pulled down by a co-servant, and that a declaration was made to that effect by plaintiff. This, however, was denied, and may not, therefore, be accepted. But the cause of the fall remained as much of a mystery as before. Defendants are to be chargeable with negligence for thrusting plaintiff into a dangerous place, but, before they can be so charged, there must be a condition established showing that it was dangerous. If the bales stood high, and in immediate proximity to plaintiff, and were insecure and toppling, had fallen before, or were apparently liable to fall, or if there was violent motion, or motion of the vessel sufficient to render them insecure, there would be something from which the jury could say that this was a dangerous position. The position of the witnesses enabled them to speak as to these matters, but their mouths remained closed, and, aside from the accident itself, we are left mainly to conjecture what the condition was, and we may or may not conjecture that it was unsafe and dangerous. This unsatisfactory condition is insufficient as a basis for the awarding of damages. It may be that this place was apparently dangerous, but it is not so proved by this record. The danger of standing under an open hatchway, from liability to be struck by falling material, has been repeatedly forced upon the

attention of the courts.    This was the place selected by plaintiff. Was the place where he was directed to go more or less dangerous? We do not know, and the proof does not enlighten us.    As we are unable to tell what caused this bale to fall, coupled with the fact that we are not able to see that the place where plaintiff was directed to go was more dangerous than the place he was directed to go from, or that either was at the time apparently dangerous, we must conclude that negligence was not made out; for we can as well say that the injury arose from an unforeseen cause, which no one could contemplate, from a latent defect, which was not apparent or discoverable by inspection, or from a cause of which plaintiff assumed the risk, as to say otherwise.    The responsibility now resting upon this court, respecting this class of actions, makes the duty of the court more imperative in its scrutiny of the evidence than ever before; and we must be able to see that the evidence fairly warrants the verdict rendered, and that it is sufficient for its support.

The defendants are entitled to a new trial.    Judgment should therefore be reversed, and a new trial ordered, with costs to abide the event.    All concur.