(22 App. Div. 466.)

### O'CONNELL v. CLARK et al.

(Supreme Court, Appellate Division, Second Department. November 30, 1897.)

1. INJURIES TO SERVANT—LIABILITY OF MASTER.
    Where a servant, who was experienced in the work, went voluntarily to the place in which he was injured, he cannot recover for the injury against the master, whether he was directed by the latter to do so or not.

2. SAME—PLEADINGS.
    A servant, suing for injuries, who only alleged that he went to work in the place where he was injured by the direction of the master, cannot recover on the theory that he was compelled by the master to go to such place.

Appeal from trial term.

Action by James O'Connell against John Clark and William Clark. Plaintiff had judgment, from which, and an order denying a new trial, defendants appeal. Reversed.

Argued before GOODRICH, P. J., and CULLEN, HATCH, and BRADLEY, JJ.

Perry D. Trafford, for appellants.
Thomas P. Wickes and George W. Bristol, for respondent.

CULLEN, J. This action is servant against master, to recover for damages resulting from personal injuries. The parties are longshoremen, the plaintiff being an employé. The plaintiff had pursued his occupation for some 10 years, and was fully cognizant of its risk, and skilled in the proper prosecution of the work. On the occasion of the accident the parties were engaged in taking a cargo of jute, packed in bales, out of a ship. The work was being done in the lower hold. The plaintiff had made up a draft of four bales, and given the signal to the gangway man to hoist it out of the hold. The draft caught under the coamings of the hatch. According to

the plaintiff's story, he was pulling the draft towards the middle of the open hatchway, so as to clear it from the coamings, when the defendant, with an oath, told him to go behind the draft, and at the same time forcibly thrust him in that position. Almost immediately thereafter a bale of jute, from the cargo still in the hold, fell upon the plaintiff, inflicting injuries which necessitated an amputation of his leg. The defendant denied both that he ordered the plaintiff to go behind the draft, and also that he applied any force to him. The complaint does not allege that the defendant used any violence or force to the plaintiff, but charges him with negligence in directing him to work in an unsafe place. On a previous trial the plaintiff recovered a verdict, which was reversed on appeal by this division of the court. 6 App. Div. 33, 39 N. Y. Supp. 454.

I think the principles which govern the determination of this case are comparatively clear and simple. It is the duty of the master to use reasonable care to provide the servant with a safe place to work, with safe and suitable appliances, and to carry on the work in a reasonably safe manner. The present case does not present the question of a safe place. Of course, in one sense, the place at which the bale fell upon the plaintiff and injured him was unsafe. In the same sense, a place in the strongest and most substantial factory would be unsafe if a missile from the outside should enter the factory and strike there. But the principle of a safe place does not apply where the prosecution of the work itself makes the place, and creates its dangers. Still less is there any question here of an unsafe appliance. If any imputation of fault can rest on the defendant, it relates strictly to the methods of the prosecution of the work itself, as distinguished from the matter of place to work, or appliance with which to work. Most of the dangers of the plaintiff's employment were obvious. He had long experience in the work. He knew his employer was in no manner connected with, nor responsible for, the manner in which the ship was loaded, or its cargo stored. In taking out the cargo, there might be some danger of it falling down upon the workmen, the same as of earth falling down where a laborer is digging into a bank. This danger would vary, and be greater or less, depending on the character of the cargo, and the manner in which it is stored. While goods were being elevated through the hatch there was the danger of the draft, or part of it, getting loose and falling down. There is no evidence to show that pushing the draft towards the hatch was not an ordinary and proper manner of working, except the testimony of the plaintiff, to the effect that he always pulled the draft, and did not push it. It may be that, until the cargo was taken out for some space around the hatch, the danger that part of the cargo might fall upon the workman, who, from his position, would be unable to observe it, would be greater than the risk of some article falling down the hatchway. The plaintiff claims that such was his judgment, and the verdict of the jury has probably established the fact. But, if this were so, the risk was obvious, and as palpable to the plaintiff as it was to the defendant. There are cases where, in the use of machinery, or in the prosecution of a work involving some

degree of technical knowledge, the servant cannot be presumed to know the risks and dangers as well as the master; and in such cases the servant can rely on the master's superior knowledge, and his assurance of the absence of danger. This is also true where the danger proceeds from a part of the work or the character of appliances which the servant's labor does not call him in contact with, or make him conversant with their condition. A bricklayer might not be supposed to be familiar with the thrust of the roof on the building in the erection of which he was engaged, or the sufficiency of the walls and piers to resist the strain which was imposed on them. But he would know, as well as his master, the chance of a wall laid up dry, without mortar, tumbling down. In the present case every danger of the situation, and the proper way of avoiding those dangers, so far as it was practicable, were as plain and familiar to the plaintiff, with his experience, as they were to his master. Nor was there any duty to make an inspection by other servants cast upon the master. It was the plaintiff and his fellow workmen who should know and apprise the master, if any unexpected dangers had appeared in unloading the vessel. Therefore a mere direction from the master to go behind the draft and push it would not have relieved the plaintiff from the charge of contributory negligence, or rendered the master liable. This necessarily follows from the concession of counsel for respondent, who says:

"If the plaintiff had voluntarily gone around behind to push the draft clear of the coamings, it is conceded that he would have no cause of action; but the real situation is very different. The plaintiff was deprived by the acts of the master himself of the opportunity to exercise any volition whatever."

We think that if the plaintiff went voluntarily to the place in which he was injured, whether by direction of the master or without direction, the result is the same,—he cannot recover. The plaintiff's testimony, if credited, however, showed more than a mere direction by the master. It was to the effect that the master, by force and violence, and against the plaintiff's will, had thrust him into a place of danger. If the complaint had properly charged this act, and the cause had been submitted to the jury on such an issue, a recovery could be upheld. But this was not the theory on which the case was presented to the jury for determination. It went to the jury on the theory of the defendant's negligence in giving improper directions to the plaintiff, and it was stated that no reliance was placed on the violence or force used by the defendant, other than as intended to emphasize or make clear his direction. For the theory on which the case was submitted to the jury, the plaintiff's counsel alone is responsible. In our view, the liability of the defendant can be sustained on no such theory. The question of his liability depends on the fact whether he forcibly thrust the plaintiff into danger. If he did not, he was not liable. This issue has not been passed upon. The court was requested to charge, "If the jury believe that defendant ordered the plaintiff to go behind his draft, but did not push or shove him, their verdict should be for the defendant." This the court refused; thus, in our opinion, taking away

from the jury the only issue on which the liability of the defendant could be predicated.

The judgment and order appealed from should be reversed, and a new trial granted; costs to abide the event. All concur.