JAMES CARROLL, Appellant, *v.* THE MAYOR, ALDERMEN AND COMMONALTY OF THE CITY OF NEW YORK, Respondent.

*Negligence — a city permitting an unrigged mast and gaff on a pier to oe used by those delivering material there to it.*

A municipal corporation owning a pier, which was used for the storage of material required by it in the repair of its streets, had thereon a mast and gaff, which, when equipped with the necessary rigging and tackle, could be used as a derrick, and was in fact used by persons who had occasion to deliver material at the pier, if they saw fit to do so and to put it in a condition to be used.

A seller of some stone to the city employed to deliver it one Wynn, whose men, finding the mast and gaff, provided the necessary ropes and tackle, with which they rigged it, and, in using it for hoisting the stone, one of them was injured by reason of the breaking of a pin upon which the gaff swung.

In an action to recover the damages thus sustained, the complaint was dismissed upon the plaintiff's evidence.

*Held,* that, as the evidence showed that the mast and gaff were not a permanent fixture upon the pier, and that the defect therein complained of might very easily have been observed by the slightest inspection, the complaint was properly dismissed;

That the defendant, having made no contract with anybody with regard to the mast and gaff, was not rendered liable for the injury occasioned by their use, simply because it permitted them to be upon its pier, and permitted persons who chose to use them to transfer goods thereby, and that it did not thereby assume the duty of using reasonable care to see that they were fit for the purpose for which they might be used.

BARRETT, J., dissented.

APPEAL by the plaintiff, James Carroll, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of New York on the 1st day of May, 1896, upon the dismissal of the complaint by direction of the court after a trial at the New York Trial Term.

*Henry W. Smith,* for the appellant.

*Theodore Connoly,* for the respondent.

RUMSEY, J.:

On the 25th day of July, 1893, the defendant was the owner of a pier at the foot of East Twenty-fourth street, which was used for the storage of materials required by the city in the repair of the streets. Among other articles that were delivered there was broken stone, which was stored in bins until such time as it might be needed. Upon the pier was a mast and gaff, put there by the city authorities, which, when equipped with the necessary rigging and tackle, could be used as a derrick. The precise purpose for which the mast and gaff were put there does not appear, but it is in evidence, and was not disputed, that persons who had occasion to deliver materials at the pier were accustomed to use it if they saw fit and to put it in a condition to be used. On the day mentioned a scow-load of broken stone lay at the pier for delivery. It had been sold to the city to be delivered upon the pier, but had not yet been delivered. The seller had employed one Wynn to deliver it to the city. In order to do that it was necessary that the stone should be taken out of the scow and transferred to bins provided to hold it. That work was to be done by Wynn. He had no connection with the city whatever, but was employed and paid by the Hudson River Stone Supply Company, the contractor which had sold the broken stone to the city. The plaintiff was in the employ of Wynn, and was by him set to work in transferring this stone from the scow to the bin. When Wynn's men went there to work, they found the mast and gaff standing on the pier. They brought with them, or provided in some way, the necessary ropes and tackle with which they rigged the mast and gaff as a derrick, and undertook to use it for hoisting the stone out of the scow and transferring it to the bins. This was done, so far as the evidence shows, without communication with any official of the city, or with any one who had control or charge of the pier or the derrick. The work began at the usual hour in the morning, and continued until about eleven o'clock, when a pin upon which the gaff swung broke, and a bucket of stone which was hanging from the gaff fell and struck the plaintiff, seriously injuring him. To recover for the damages sustained from these injuries he

brought this action. Upon the trial no testimony was given on the part of the defendant, but the complaint was dismissed upon the plaintiff's evidence. From the judgment entered upon that dismissal this appeal is brought.

The mast and gaff were clearly no part of the pier, but were simply parts of an appliance put there for use in delivering goods. The evidence shows that they were not a permanent fixture upon the pier, but were put there temporarily, although for convenience the mast was fastened to the bulkhead, but it was no part of the pier itself, and, like any other derrick, was a mere tool for convenience in hoisting goods which were to be delivered upon the pier. The rules to be applied with regard to negligence in its use and in its construction and maintenance are the same as are to be applied in the case of any other tool. It is apparent from the evidence that the defect complained of might very easily have been observed by the slightest inspection if, indeed, it was not visible to any one who had occasion to go to the derrick at all. For these reasons the ruling of the trial judge in dismissing the complaint might well be sustained on the ground that the plaintiff, in undertaking to use this tool with an apparent defect in it, took upon himself the risks or was guilty of contributory negligence. But we are not disposed to put our affirmance of this judgment upon any such ground.

The plaintiff insists that the defendant is guilty of negligence in providing the derrick for the use of these persons who had occasion to deliver goods upon the pier, and that it was its duty to use reasonable care to inspect the tool and see that it was reasonably fit for the purpose for which it was intended. Whether the plaintiff is right in this contention is the more serious question presented in this case. It must be conceded that there was no negligence on the part of the defendant, unless it had assumed by contract, or had imposed upon it in some way, a duty towards the plaintiff to supply him an article which was reasonably safe when used for delivering this stone. There is no claim made that there was any express agreement on the part of the defendant to that effect. Under the contract as proved, the broken stone was to be delivered by the seller in the bin, and it undertook to perform that portion of its contract by an express agreement with Wynn to make the delivery.

The defendant was not called upon to take any part in that delivery, or to furnish any of the tools with which the delivery was to be made. In that respect the case is distinguishable from the case of *Coughtry* v. *The Globe Woolen Co.* (56 N. Y. 124). There, the defendant, who had contracted with a firm of ironworkers to put a cornice upon its mill, had made an express agreement by which it was to furnish the necessary scaffolding upon which the contractors' workmen might stand while putting up the cornice. The scaffold put up by it was defective, and because of the defect the plaintiff's intestate fell from it and was killed. The court held that, the defendant having by express contract undertaken the duty of furnishing a safe scaffold, the plaintiff's intestate had the right to rely on the assumption that the scaffold was properly made, and that the defendant was liable for a violation of the duty which it had taken upon itself. No such facts are made to appear here. The defendant made no contract with anybody with regard to this derrick, and if it is to be held liable at all it must be upon the ground that, by permitting a part of the tool to stand upon its pier and permitting any persons who chose to use it to transfer goods, it assumed a duty of using reasonable care to see that it was fit for the purpose for which they might use it. In our opinion, no such duty is to be implied from the facts proved. It is undisputed upon the evidence that the mast and gaff, as they stood there, were not in condition to be used for any purpose whatever. Before it could be used as a derrick it was necessary that it should be supplied with ropes and tackle, and until that was done it had not become a tool which could be used in the transfer of goods. It is not claimed that any express invitation was given to Wynn to make use of this article, but it seems that he did so because it was there and it was convenient, and he saw fit to use it for his own purposes. Indeed, there is no proof in the case that either the defendant or any of its employees had any notice whatever that Wynn intended to use it. The only evidence upon the subject is that Wynn's employees, going there on the morning of the day on which this accident occurred, found this mast and gaff standing there, rigged it up with the necessary tackle and commenced to use it, and transferred the stone, without any express permission to do so, and without giving any notice to anybody of their intention to do so. It is not a case, so far as the evi-

dence shows, of a loan of a tool for a particular purpose, which the lender knows is not fitted for the purpose for which it was intended to be used. It appears that the derrick had been dismantled, or at least that it did not, at the time when Wynn undertook to use it, have the necessary attachments for use as a derrick. Standing there, as it did, an imperfect article not fitted for use, it cannot be that the defendant would be liable to any one, who saw fit to take possession of it, to supply the absent parts and endeavor to put it in condition for use without notice to, or permission of, the defendant or any of its employees. So far as the plaintiff was concerned he, as a servant, was entitled to depend upon his master to use reasonable care to furnish him with a tool safe for the purposes for which it was intended to be used.

But the city was not the master or the employer of the plaintiff. He had been hired by Wynn, and he was bound to look to Wynn to furnish him a proper tool for the purpose for which he was put to work. It was the duty of Wynn, so far as the plaintiff was concerned, to inspect this derrick and to see that it was in proper condition for use. If Wynn saw fit to take possession of a tool which he found in an imperfect condition upon the dock, and, fitting it for use, to set his men at work upon it, he was responsible to the plaintiff if the tool were not fit for the purpose for which it was intended to be used, and he cannot shift that responsibility to any other person. The defendant is not made liable simply because it did not use active means to prevent the use of this tool. It was not called upon to do anything of the kind. The article stood there in a dismantled condition. There is nothing in the evidence to lead any one to believe that the defendant had notice that Wynn's men would take possession of it when it was in that condition; and even if the defendant had such notice, in the absence of some affirmative act on its part by which the tool was lent or provided for that special purpose, it had no duty and incurred no liability. The rule is well settled in regard to real estate that a licensee who enters upon premises by permission only, without any enticement or allurement or inducement being held out to him, cannot recover for injuries caused by dangers which are upon them. No duty of active vigilance is imposed upon the owner to keep them in a suitable condition for those who come there

simply for their own pleasure. (*Sutton* v. *N. Y. C. & H. R. R. R. Co.*, 66 N. Y. 243; *Hounsell* v. *Smyth*, 7 C. B. [N. S.] 733; *Larmore* v. *Crown Point Iron Co.*, 101 N. Y. 391.) That rule should be applied in this case. It cannot be that a person who has upon his premises an article which may be adapted to the use of some other man, is bound at his peril to keep it in a safe condition for use, simply because a third party may see fit to take possession of it and fit it up into a tool which is convenient for his own purposes. It must be remembered that there is no evidence in this case that this tool was lent by the city, or was intended to be lent by the city at that time to Wynn. The evidence shows clearly that in the condition in which it was it could not have been used at all, and until he had taken possession of it and fitted it up with the necessary appurtenances, it was nothing but two sticks of timber which it was possible by the aid of other material to devote to a particular purpose. Certainly, if these two pieces of timber had lain upon the pier, and Wynn had seen fit to put them up and rig them as a derrick, no one would claim that the defendant was liable. But it makes no difference that they were fastened together and that the mast stood erect; it still was not a derrick. It was not a tool which the defendant kept there ready for use, and as long as it was not, clearly Wynn could impose no duty upon the defendant when, without any notice, he saw fit to take possession of it and put it in the hands of his men to turn it into a complete derrick and use it for his own purposes.

Even if it appeared that the completed tool had been lent by the defendant to Wynn for the purpose for which Wynn used it, it is not at all certain that the plaintiff, having been injured by it, would have any action against the defendant. (*Blakemore* v. *Bristol & Exeter Ry. Co.*, 8 E. & B. 1035.) The plaintiff's remedy is against his employer, who did not use reasonable care to furnish him with a safe tool. The case of *Thomas* v. *Henges* (131 N. Y. 453) is not at all in point. The report in the Court of Appeals is extremely defective. The case is not reported in the regular series in the Supreme Court, but by an examination of the General Term opinion, which is found in the 16th volume of the New York Supplement (p. 700), it will be seen that the injury to the plaintiff was caused, not by the use of a defective tool which broke in the using, but

because the mast of the derrick fell while the plaintiff's sloop was fastened to the pier. It seems that the plaintiff's intestate was a boatman and had made fast to the dock, in pursuance of a contract between the defendant and his employer. In the evening, while he was standing on the deck of his boat, the mast of the derrick which stood upon the pier fell upon him and killed him. The derrick was not in use at the time, and, so far as appears, had not been used that day. The defendant was held to be liable for the reason that, having contracted with the employer of the plaintiff's intestate for the use of the pier, he was bound to keep it in a reasonably safe condition, and not to erect upon it any structure which would be likely to injure a man who was lawfully there. The decision was based upon the ruling in the case of *Swords* v. *Edgar* (59 N. Y. 288), and stands upon the implied duty of every owner of real estate to use reasonable care towards persons who are invited to go upon the property, not to put thereon any structure which is intrinsically dangerous or likely to do harm. In that particular case the thing that fell happened to be a derrick; but that fact is of no importance, because the rule would have been the same if it had been a stone wall or a portion of the side of a house. For the purpose of that case it was a portion of the dock, and the owner of the dock was bound to see that it was not in a dangerous condition. The case is no authority upon the question presented here.

We have examined the rulings upon the evidence, and we find nothing which would require a reversal of this judgment.

The judgment must be affirmed, with costs.

VAN BRUNT, P. J., INGRAHAM and McLAUGHLIN, JJ., concurred; BARRETT, J.; dissented.

BARRETT, J. (dissenting):

I think that this case was for the jury. It is said that the city did not invite Wynn to use the derrick, and, hence, was under no duty to him or his employees to see that it was safe. I think the jury might properly, upon the evidence, have found the contrary. The derrick was erected upon city land by city employees. It was in a spot where it could be conveniently used to unload stone, and was so used continually with the knowledge of the city authorities. Dubois, the foreman of the Twenty-fourth street yard, testified as

follows: " It was used by stevedores in discharging broken stone to the bin that was on the bulkhead. * * * I saw this was used by these people for removing stone." Not only was this use not prevented by the city authorities, but it evidently had their full sanction. In fact, it is difficult to see what other purpose they could have had in erecting the derrick. Whether they had special knowledge of Wynn's intention to use it, or his use of it, is quite immaterial.

Stress is laid upon the fact that the derrick was not rigged, and that Wynn supplied his own tackle. But this by no means negatives the evident intention that the derrick should be used. The city might well be willing to furnish the structure of the derrick, and invite its use, on condition that the stevedores should supply their own tackle. To liken this unrigged derrick to loose timber lying upon the bulkhead seems somewhat grotesque.

The city having thought fit to erect this derrick and to invite its use by those transacting business with it, is certainly under a duty to keep it safe and fit for that use. *Coughtry* v. *Globe Woolen Company* (56 N. Y. 124) is a direct authority, which does not differ in any material respect from the present. It is true that there the defendant made an agreement with Osborn & Martin, the plaintiff's employers, to erect the scaffolding upon which he was injured. But the decision was not in the least based upon this fact. RAPALLO, J., said : " By placing it (the scaffold) where they did, on their own premises, for the use of the workmen, they (the defendant) not only licensed but invited them to go upon it, and impliedly held out to them that it was a safe structure, or at least that proper care had been used in its erection. These facts did, we think, impose a duty upon the defendant toward any person who should be invited or licensed by it to go upon the structure, to use proper diligence in its construction and maintenance, *and that this duty existed independently of anything contained in the contract with Osborn & Martin.* * * * If the contract had been silent as to stagings * * * the case would not be materially varied." This case has never been questioned, but has often been cited with approval.

It shows plainly that liability in such cases is not based on privity of contract, but upon the common-law duty to use reasonable care

to prevent injury to another from an instrument which he is invited to use.

The question as to the plaintiff's contributory negligence was plainly for the jury. I must emphatically dissent from the statement that it is apparent from the evidence that the defect complained of might very easily have been observed by the slightest inspection. Nothing but a thorough examination would have disclosed the defect of the pin.

I may add that the case cannot be disposed of upon the authority of *King* v. *N. Y. C. & H. R. R. R. Co.* (66 N. Y. 182), since the city did not surrender the derrick under a contract with a third party, but remained throughout in full control of it.

I think the judgment should be reversed, and a new trial ordered.

Judgment affirmed, with costs.