(67 App. Div. 223.)

### BROWN v. TERRY et al.

(Supreme Court, Appellate Division, Second Department. December 23. 1901.)

1. NEGLIGENCE—MASTER AND SERVANT—REPAIRING STEAMSHIP—DEFECTIVE VENTILATOR—SAFE TOOLS AND IMPLEMENTS.
   Plaintiff was employed by ship repairers to assist their foreman in making such repairs to a vessel as the engineer thereof should direct. The engineer directed the repair of a band at the bottom of a ventilator made of boiler iron. While the foreman and plaintiff were fastening the band around the ventilator, 20 feet of the lower part of it broke off, through some defect in the riveting, and crushed plaintiff's foot. *Held*, that defendants were not negligent in failing to provide proper tools and implements, the ventilator not being a tool, implement, or appliance.

2. SAME—SAFE PLACE TO WORK.
   Defendants were not liable for failure to provide a safe place to work, since the work could only be done in the fire room, which was a safe place, unless made unsafe by the prosecution of the work itself.

3. SAME—ENGINEER—REPRESENTATIVE CAPACITY.
   The engineer was not the alter ego of defendants, but represented only the owners of the ship.

4. SAME—FELLOW SERVANTS.
   The foreman, having been actively engaged in assisting in the same work, was a fellow servant.

5. SAME—INSPECTION.
   Defendants, having no opportunity to do so, were not negligent in not inspecting the ventilator.

Appeal from trial term, Kings county.

Action by Matthew L. Brown against Albert Terry and another. From a judgment in favor of defendants, and from an order denying a motion for a new trial, plaintiff appeals. Affirmed.

Argued before GOODRICH, P. J., and BARTLETT, WOODWARD, HIRSCHBERG, and SEWELL, JJ.

Robert Stewart, for appellant.

Frank H. Parsons, for respondents.

SEWELL, J. The relation of master and servant existed between the plaintiff and the defendants at the time the former received the injuries for which this action was brought. The learned trial judge dismissed the complaint at the close of the plaintiff's case, and the question is whether the evidence given tended to show that the accident was the result of some omission of duty on the part of the defendants.

The defendants were engaged in the business of altering and repairing steamers and other vessels lying in the port of New York. The defendants sent O'Rourke, their foreman, to the steamer Algoa, to do whatever was necessary to be done. He was directed by the defendants to hire the plaintiff if he wanted a man, to go to the engineer of the ship, and find out what was to be done, and to make all the repairs that he gave orders to do. O'Rourke hired the plaintiff, and they went on the ship together. They first caulked the ship and tightened some loose rivets. After that they caulked and put some rivets in the hatch stock, around the hatch coamings. According to the plaintiff's story, the engineer "took Mr. O'Rourke down, and showed him a job on the blower in the engine room, and we both went down and started on the blower. Then he took Mr. O'Rourke to the fire room, and told him about the job on the ventilator. Mr. O'Rourke came back, and said it would be well to go and get the band off; that is, the band on the ventilator. * * * It was broken. * * * I went to take it off, and I came back, and told Mr. O'Rourke I could not do it alone. He came along with me, and then we removed it." The ventilator was a tube of boiler iron, 32 feet long and 2 feet in diameter. It was made in two sections, riveted together, and extended from the deck to the fire room, about 8 or 10 feet above the floor. It was supported at or near the top, and was held in place and prevented from swaying by a band of iron, which passed around the lower end, and through the bulkhead or partition to which it was secured. The circumstances which led up to the accident, according to the testimony of the plaintiff, were these:

"After dinner we came back, and O'Rourke says, 'They are going to put in coal here,—going to work at it,—and we have to hurry to get that band on to get in coal in the coal bunker so they can work it, and we better start in and get it done.' I says, 'All right.' We started to get it on, and O'Rourke got his end on. I was getting over to get my end on, too, and it gave no warning, when twenty feet of it dropped right down, caught my foot, and held me there. It did break; that is, the ventilator itself. It broke about five feet below the grating and about twenty feet above my head."

O'Rourke was sworn as a witness for the plaintiff, and testified: .

"We had to put a strain on that ventilator when we were putting that band on to get it in place,—to shove it to the place; a strain about what I could shove. If the ventilator had been sound and firmly riveted together along its length, the strain which I and Mr. Brown put upon that ventilator to bring the band up against the bulkhead 'would not have caused those rivets to sheer off. It would not; no, sir. * * * I examined it after it was broken. I went back, and put it together again. When I examined it at the place where it had broken, I found that the rivets had been cut off by the weakening of the ventilator or something. It seemed to be an old break."

We are of the opinion from these facts that the plaintiff failed to make out a case for the consideration of the jury. The injury is not attributable to the defendants' negligence in omitting to furnish adequate and suitable tools and implements, or a safe and proper place in which to prosecute the work. The ventilator was not a tool, implement, or appliance, within the meaning of the rule, and the place where the work was done was not obviously or necessarily dangerous. The work could only be done in the fire room of the ship. It was a safe place, and if made unsafe it was the fault of the persons employed, and not of the defendants. The principle of a safe place does not apply when the prosecution of the work itself makes the place and creates its dangers. O'Connell v. Clark, 22 App. Div. 466, 48 N. Y. Supp. 74. The engineer of the ship was in no wise the alter ego of the defendants, as claimed by the plaintiff. He represented only the owners of the ship in pointing out or directing the work necessary to be done. It does not appear that O'Rourke represented or stood in the place of the defendants. He was employed just as the plaintiff was. They were working together for a common purpose. Assuming, however, that he was delegated with the discharge of all the duties which in the conduct of the work rested upon the defendants to perform in respect to the plaintiff, he was still a servant in respect to such work as properly belongs to a servant to do. The liability of the master depends upon the character of the work in the performance of which the injury arises, without regard to the rank of the employé performing it. If the act is one which pertains only to the duty of the operative, the employé performing it is a mere servant, and the master, although liable to strangers, is not liable to a fellow servant for its improper performance. Crispin v. Babbitt, 81 N. Y. 516, 37 Am. Rep. 521.

The only imputation of fault relates to the method of the prosecution of the work itself, and not to the matter of place or appliance. If the accident was caused by shoving the ventilator into position, it is clear that there is nothing in the case to show that the defendants are liable. If it is to be attributed to the failure to inspect and repair the ventilator before removing or attempting to replace the band, it is equally clear that the defendants are not responsible. They had no opportunity to inspect it for the purpose of discovering any deficiency in its material or structure, and exercised no personal supervision over the work. They had employed for the performance of the work a skilled and competent foreman, and the plaintiff, a man of more than 20 years' experience in making repairs in ships, who had

put in hundreds of ventilators, and understood their construction. While performance of the various details of the work was left to the intelligence and skill of their foreman, he was none the less a fellow servant of the plaintiff.

As the court said in Cullen v. Norton, 126 N. Y. 1, 26 N. E. 905:

"The accident resulted from a negligent act done in the very course of the work, and by one of the fellow workmen of the deceased. The negligent act was a part performance of the work itself, the risks of which the deceased had assumed. The master had provided a competent and experienced foreman, who had been in his employment a number of years, and he was not chargeable with the consequences of a place for work made dangerous only by the carelessness and neglect of a fellow servant (Hussy v. Coger, 112 N. Y. 614–618, 20 N. E. 556, 3 L. R. A. 559, 8 Am. St. Rep. 742), although that fellow servant happened to be the foreman."

Similar to this is the case of Kimmer v. Weber, 151 N. Y. 417, 45 N. E. 860, 56 Am. St. Rep. 630, where workmen voluntarily constructed, according to their own judgment, a temporary platform for which suitable material had been furnished by their master, and the foreman united with the workmen in determining that the structure was safe. The court held that they were co-servants, and that, their determination being at most an error of judgment with respect to a detail of the work, it did not render the foreman guilty of negligence attributable to the master in permitting the workmen to use the platform.

So, in the case of Copasso v. Woolfolk, 163 N. Y. 472, 57 N. E. 760, it was held that:

"The master, in such a case, is not supposed to watch for supervening conditions in the progress of the work on which his workmen are engaged. If his measure of duty had been performed by sending them off to the work under right conditions, with an experienced foreman and competent workmen, nothing further was incumbent upon him. If the accident happened during the performance of their work, due to some negligent act of commission or of omission in their midst, then the negligence was that of a fellow servant, and that was a risk which the plaintiff assumed in entering upon the employment."

Perry v. Rogers, 157 N. Y. 251, 51 N. E. 1021; Loughlin v. State, 105 N. Y. 159, 11 N. E. 371.

The present case is within these decisions. It is the ordinary case of mismanagement or error of judgment on the part of a co-employé of superior grade in respect to detail of the work in which he and the plaintiff acting under him were at the time engaged.

If these views are correct, there was no question to be submitted to the jury, and the judgment should be affirmed, with costs. All concur, except HIRSCHBERG, J., not voting.