whole controversy in one action. Spahn v. Spahn, 12 Abb. N. C. 169. In that case the defendant in an action for divorce set up both adultery and cruelty as counterclaims. A motion to compel the defendant to elect between the two counterclaims was denied. In Israel v. Israel, 38 Misc. Rep. 335, 77 N. Y. Supp. 912, the wife denied the allegations of adultery, and set up in her answer acts of cruelty and abandonment. The jury found in her favor on each issue. Separation was decreed upon the defendant's counterclaim. In Waltermire v. Waltermire, 110 N. Y. 183, 17 N. E. 739, the husband brought an action of separation against his wife. The answer alleged cruel and inhuman treatment on the part of the plaintiff, and asked for a decree of separation. The proof shown defeated his action. Judgment of separation was granted the defendant. The case of Griffin v. Griffin, 23 How. Prac. 183, decided in 1862, is relied upon by the plaintiff as an authority that cruel treatment cannot be set up as a counterclaim in an action for divorce. Under section 1770 of the Code of Civil Procedure, and the more recent authorities above referred to, that case must be considered as overruled. The allegations objected to constitute and relate to the defendant's counterclaim, and should not therefore be stricken out. The objection of redundancy is not forceful.

It is not a fatal objection that the answer did not in express terms define as a counterclaim the matter set up as such, inasmuch as it distinctly appears by the relief demanded that it was intended as a counterclaim. Metropolitan Trust Co. v. Tonawanda R. R. Co., 18 Abb. N. C. 368, 380; McCrea v. Hopper, 35 App. Div. 572, 55 N. Y. Supp. 136; Baylies, Code Pl. & Pr. 115. The motion is denied, with $10 costs.

Motion denied, with $10 costs.

―――――――

## WEIZINGER v. ERIE R. CO.

(Supreme Court, Appellate Division, First Department. July 7, 1905.)

1. MASTER AND SERVANT—FELLOW SERVANTS.

　　Where the consignee of iron sent a truckman to take charge of unloading it from a barge, and it was unloaded under the direction of the truckman, the captain of the barge having been employed to assist in unloading the iron, any negligence in piling it, whereby another servant of the consignee was injured while assisting in removing the iron from the pier, was that of his fellow servants.

　　[Ed. Note.—For cases in point, see vol. 34, Cent. Dig. Master and Servant, §§ 486–492.]

2. SAME—ASSUMPTION OF RISK.

　　A servant who was experienced in the piling of iron beams, etc., in taking his position beside a pile of such beams which were improperly piled assumed the risk of the beams slipping and injuring him.

　　[Ed. Note.—For cases in point, see vol. 34, Cent. Dig. Master and Servant, §§ 550–559.]

3. TRIAL—MOTION FOR DIRECTED VERDICT—WAIVER.

　　Where, after the close of the case, defendant moved for a directed verdict, and after the denial of the motion the case was reopened, and one

witness called on each side, and a few unimportant questions asked, whereupon the court proceeded to charge, defendant's failure to renew his motion for verdict was not a waiver of such motion.

[Ed. Note.—For cases in point, see vol. 46, Cent. Dig. Trial, § 983.]

**4. SAME—MOTION FOR NEW TRIAL—DENIAL—APPEAL—REVIEW.**

The question whether there was evidence to justify the verdict is presented on an appeal from an order denying a new trial, moved for on the merits, and the grounds set forth in Code Civ. Proc. § 999.

Appeal from Trial Term, New York County.

Action by Paul Weizinger against the Erie Railroad Company. From a judgment in favor of plaintiff and from an order denying a motion for a new trial, defendant appeals. Reversed.

Argued before O'BRIEN, P. J., and HATCH, McLAUGHLIN, PATTERSON, and INGRAHAM, JJ.

Winfred T. Denison, for appellant.

Ira Leo Bamberger, for respondent.

INGRAHAM, J. The defendant, for the purpose of receiving and discharging freight at the city of New York, is the lessee and in possession of a pier at Forty-Ninth Street and the North river, known as "Pier 49." It received for transmission to New York a certain quantity of iron beams or girders, which were brought to this pier by a barge owned by the defendant and in charge of its employés. This barge arrived at Pier 49 about June 19, 1902. One Happel, to whom these beams had been consigned, having been notified of their arrival, sent a truckman to take charge of unloading them from the barge. They were unloaded under the direction of this truckman, the captain of the barge having been employed to assist in unloading them, Happel paying him for the services thus rendered. The truckman gave directions as to where these beams should be placed on the dock so as to make it easier to get them in proper order. The truckman testified, and his testimony was not contradicted, that he was "superintending the piling of those beams, and they were piled in the way I directed them to be piled. And I receipted to the Erie Railroad Company for those goods on behalf of Mr. Happel, my employer." On the following morning, June 20, 1902, the plaintiff, who was employed by Happel, was with other employés of Happel directed to go to Pier 49 and to pick out the iron beams or girders that were upon the dock and separate them. He went to the dock for that purpose, and received directions as to the work from the bookkeeper employed by Happel. The men found the beams piled up on the dock, and under the direction of Happel's bookkeeper commenced to sort the beams. Those marked with the letter "A" were to be used in the subcellar of the building which Happel was erecting, those marked "B" in the cellar, and so on. Plaintiff and the other men employed by Happel commenced to lay the beams apart in their regular order according to their lettering, so that they could be carted off the dock in the order in which they were to be used. This bookkeeper was standing on the string piece of the dock, facing the plaintiff and other men who were engaged in this work, just behind the pile

of beams at which the men were working. The plaintiff testified that there was a pile of three or four beams, and just behind it a large pile, which was about four feet in height; that the men first sorted the small pile, which was about five feet away from the larger pile; that the larger beams weighed from 1,800 to 2,000 pounds each; that as these men were engaged in moving the last beam of the small pile, the plaintiff standing between this single beam and the larger pile, a beam upon the larger pile fell, catching the plaintiff's foot and causing a serious injury. There was evidence to show that this larger pile had been improperly piled. The plaintiff testified positively that he did not touch the larger pile, and that nothing that he did to it could have caused the beam to fall. The theory upon which the plaintiff claims to hold the defendant liable was that this pier was a public dock, and that the defendant was responsible to any one lawfully upon the dock for the improper or insecure method in which these beams had been piled. It is quite clear, however, that it was the plaintiff's employer, and not the defendant, who was responsible for the method adopted in pilin these beams; and that, if there was any improper method adopted, it was Happel or his employés, and not the defendant, that was liable. An entirely different question would have been presented if this pile had fallen and injured a person lawfully upon the dock, not engaged in unloading and taking away the beams which had been consigned to Happel, and over which he had assumed control. The plaintiff was doing Happel's work. The method adopted was that prescribed by Happel, or those representing him, and a neglect in adopting a proper method to pile the beams was the negligence of the plaintiff or his fellow workmen, for which the defendant was not responsible. The risk of an injury resulting from the slipping or falling of these beams was a risk incident to the work in which the plaintiff was engaged. The method adopted in piling these beams was a part of the work in which plaintiff was engaged, and was perfectly apparent to the plaintiff, who was an experienced man in work of this kind. The danger of beams slipping resulting from the method in which they were piled was apparent, and when the plaintiff placed himself in a position alongside of this larger pile, alleged to have been improperly piled, he took upon himself the risk of the beams slipping while engaged in this work; and clearly the defendant cannot be held responsible for a negligent act of the plaintiff or the other employés of Happel's that occasioned these beams to slip. See Carroll v. The Mayor, 29 App. Div. 420, 51 N. Y. Supp. 620, affirmed 159 N. Y. 559, 54 N. E. 1089; O'Connell v. Clark, 22 App. Div. 466, 48 N. Y. Supp. 74; same case, 75 App. Div. 619, 78 N. Y. Supp. 93; Downes v. Elmira Bridge Co., 179 N. Y. 136, 71 N. E. 743.

The plaintiff, however, insists that, as the defendant failed to make a motion to dismiss the complaint or direct a verdict after all the testimony had been taken, it conceded that there was evidence that required the submission of the question to the jury. It seems that after the close of the defendant's case both parties rested, when the defendant made a motion to direct a verdict for

the defendant. That motion was denied, and counsel for the defendant excepted. The counsel then proceeded to sum up to the jury, and subsequently the case seems to have been reopened, and one witness was recalled by counsel for the defendant and one was recalled by counsel for the plaintiff, and a few unimportant questions asked them, when the court proceeded to charge the jury. We think that the failure of the defendant to renew its motion after this reopening of the case was not a waiver of its former motion to direct a verdict for the defendant, which had been denied, and to which it had taken an exception. The case had been closed, and counsel had summed up to the jury. This reopening of the case did not substantially change the position. The court had announced its decision upon all the evidence, and the additional evidence taken was not at all material to the final determination of the motion to direct a verdict; but after the verdict was reached there was a motion for a new trial, which was denied, and an order entered, from which the defendant has taken an appeal. The motion for a new trial was upon the minutes, and upon all the exceptions taken upon the trial, and upon all the grounds set forth in section 999 of the Code of Civil Procedure; and assuming that the defendant had waived its motion for the direction of a verdict, and that an exception to a denial of that motion was not available, the question as to whether there was evidence to justify the verdict of the jury is presented on the appeal from the order denying the motion for a new trial.

It follows that the judgment and order appealed from must be reversed, and a new trial granted, with costs to the appellant to abide the event. All concur; PATTERSON, J., in result.