(159 App. Div. 866)

## HANSEN v. NEW YORK DOCK CO.

(Supreme Court, Appellate Division, Second Department. December 31, 1913.)

1. MASTER AND SERVANT (§§ 101, 102*)—SAFE PLACE OF WORK.
   The master must exercise reasonable care to provide a fairly safe place of work for his servant.
   [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 135, 171, 174, 178–184, 192; Dec. Dig. §§ 101, 102.*]

2. MASTER AND SERVANT (§ 103*)—MASTER'S DUTY—DELEGATION—SAFE PLACE OF WORK.
   The master's duty to exercise care to furnish a safe place of work cannot be delegated.
   [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 175; Dec. Dig. § 103.*]

3. MASTER AND SERVANT (§ 107*)—SAFE PLACE OF WORK.
   If the structure was a completed one upon which the servant was directed to do some additional work when injured, the rule requiring the employer to furnish a safe place of work would apply, but would not apply if it were an unfinished structure and the place of work and resulting dangers were made in the course of the work, in which case the employer would not be liable for the negligence of employés in executing the details of the work.
   [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 199–202, 212, 254, 255; Dec. Dig. § 107.*]

4. MASTER AND SERVANT (§ 107*)—SAFE PLACE OF WORK.
   The rule requiring a master to furnish a reasonably safe place of work only applies where the place of work is furnished by the master in the ordinary conduct of his business.
   [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 199–202, 212, 254, 255; Dec. Dig. § 107.*]

5. MASTER AND SERVANT (§ 107*)—SAFE PLACE OF WORK—NECESSITY OF FURNISHING.
   Where the hopper on which an employé was working when injured had been completed for the purpose for which it was originally designed a week before he was injured, and accepted by the employer, and the addition to it which he was engaged in making, when injured, was a distinct piece of work, the employer was bound to furnish a safe place of work on the hopper; the fact that the necessity for such addition was not shown for some weeks after the work was begun and that the employé had assisted in the original construction not preventing the application of the rule.
   [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 199–202, 212, 254, 255; Dec. Dig. § 107.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date. & Rep'r Indexes

**6. MASTER AND SERVANT (§ 289\*)—INJURIES—JURY QUESTION.**

In an action for injuries to an employé while working on a hopper, whether plaintiff was negligent in not observing the insecure railing on which he was leaning when he fell, or in unduly pressing against it, in doing the work, *held* a jury question.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1089, 1090, 1092–1132; Dec. Dig. § 289.\*]

Appeal from Trial Term, Kings County.

Action by Andrew Hansen against the New York Dock Company. From a judgment for plaintiff and an order denying a new trial, defendant appeals. Affirmed.

Argued before JENKS, P. J., and THOMAS, CARR, STAPLE-TON, and PUTNAM, JJ.

Adolph F. Bruenner, of Brooklyn, for appellant.

Martin T. Manton, of New York City (William H. Griffin, of New York City, on the brief), for respondent.

STAPLETON, J. The plaintiff, a carpenter, sustained personal injuries while working for the defendant, a corporation. In a common-law action, laid in negligence, he received a verdict of $3,000. From the judgment entered upon that verdict, and from the order denying a motion for a new trial, this appeal is taken.

The plaintiff was 55 years of age. He had been employed by the defendant for about two years. On the morning of March 29, 1911, the date of the accident, he and a fellow workman named Peterson were ordered by the general manager of the defendant to go upon the platform of a hopper standing on a dock at the foot of Conover street, Brooklyn, and place boards around the edging.

This hopper was a rectangular wooden structure designed to be used for the transfer of linseed from ships to railroad cars. Its framework consisted of four upright corner posts reinforced with bracing strips placed, some horizontally and some diagonally, from post to post. The distance from the ground to the platform was 12 to 15 feet. The platform, in dimension 8 feet by 10 feet, was completely boarded. The corner posts extended some 30 inches above the platform. On two sides of the platform a strip of wood was laid from post to post, on top, forming a rail. At both ends of the third side there was a rail, but in the center of that side an open space was provided for a chute. There was no rail on the fourth side. The fourth or open side was up against the stringpiece, close to the ship. On the side where the platform was partly inclosed, and to the left as one faced the hopper, a ladder extended from the ground to the platform level. The ladder was formed by attaching strips of wood to the corner post and to another post placed there for the purpose.

The plaintiff and Peterson climbed to the platform by means of this immovable ladder, and proceeded to place boards around the edge as directed. The plaintiff placed the boards on one side and Peterson on the other. The boards were ⅞ inch by 4 inch cleats. On his side, the plaintiff nailed on the first and second cleats, and possibly the

---

\*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

third, by stooping under the rail. He could not nail on any more in this manner because of insufficient space between the last placed cleat and the rail, and so he proceeded to finish the task by leaning over the rail. As he leaned thus, with a hammer in one hand and a cleat in the other, the rail gave way, and he overbalanced and fell to the ground, carrying the rail with him. He received severe injuries, which, however, are not the subject of dispute upon this appeal. The rail had been improperly and negligently laid. Through one end of it a tenpenny nail had been driven, but the nail did not penetrate the post; "It was driven on the outside."

Four or five days before the happening of the casualty, this hopper, and another and similar one, were built by the defendant's carpenters on the defendant's premises at the foot of Joralemon street, which is many blocks distant from the foot of Conover street, the place of the accident. It would seem that the plaintiff performed some of the work of construction. He denied that he assisted in the completion of the work, or that he was on the platform, or that he adjusted any of the rails. There is evidence that he had charge of the work and that he co-operated in the construction of the platform, but defendant's witness Thompson testified that plaintiff had nothing to do with the placing of the rails, that he had not worked on the platform, and that his work had been confined to the bracing.

In determining this case, we must assume that the plaintiff was engaged in the original construction of the hopper, because if a finding that he was not was essential to his cause of action we would be required to set aside a verdict involving that finding as contrary to the evidence. That circumstance in the case was presented to the jury by the trial court in a satisfactory manner.

The contention of the respondent is that the defendant failed to provide him with a safe place in which to work. He argues that:

"The hopper, without dispute, had been constructed and completed a week previously and brought down to its permanent location, and plaintiff was simply engaged in making some additions which occurred to defendant's superintendent as an afterthought." "This hopper without this addition was in every sense a completed structure, a permanent place to work." "To this permanent place defendant's alter ego directed plaintiff to go about a week subsequent to the time when the structure was at Joralemon street, for the purpose of making this addition to the sides of the hopper."

The appellant's theory is that as to the plaintiff the hopper or its platform was not a "place."

[1] The chief question is whether, by his evidence, the plaintiff has brought his case within the general rule that it is the duty of the master to exercise reasonable care to provide for his servant a fairly safe place in which to do his work.

[2] This rule involves an obligation which is personal to the master and which may not be delegated so as to escape the consequences of negligent performance.

[3] An answer in plaintiff's favor depends upon the correct disposition of a fundamental inquiry: Was this a completed structure upon which he was directed to do additional work? If it was, the general rule would apply. McGuire v. Bell Telephone Co., 167 N. Y. 208,

210, 60 N. E. 433, 52 L. R. A. 437; Kranz v. L. I. R. Co., 123 N. Y. 1, 25 N. E. 206, 20 Am. St. Rep. 716; Finn v. Cassidy, 165 N. Y. 584, 59 N. E. 311, 53 L. R. A. 877; Terranova v. City of New York, 158 App. Div. 489, 143 N. Y. Supp. 545. Was it an unfinished structure upon which he was working, "where the prosecution of the work itself makes the place and creates its dangers"? O'Connell v. Clark, 22 App. Div. 466, 48 N. Y. Supp. 74; Stourbridge v. Brooklyn City R. R. Co., 9 App. Div. 129, 41 N. Y. Supp. 128; Citrone v. O'Rourke Engineering Const. Co., 188 N. Y. 339, 80 N. E. 1092, 19 L. R. A. (N. S.) 340; Capasso v. Woolfolk, 163 N. Y. 472, 476, 57 N. E. 760; Perry v. Rogers, 157 N. Y. 251, 51 N. E. 1021; Mullin v. Genesee Co. El. L., P. & Gas Co., 202 N. Y. 275, 279, 95 N. E. 689. If the case presents an affirmative answer to the latter question, "all those who are engaged in the same common purpose are fellow servants for whose negligence in executing the details of the work the master is not liable, even though 'the work is done in successive stages, different parts thereof being devolved upon different persons, and the labor performed by one set of employés being prior in time to that performed by another set.'" Citrone v. O'Rourke Eng. Const. Co., supra, and cases there cited; Mullin v. Genesee Co. El. L., P. & Gas Co., supra.

[4] Of course, when it is said that a master is bound to furnish his servants with a reasonably safe place in which to work, it is plain that the rule applies only where in the ordinary conduct of the master's business the master furnishes the place. McGuire v. Bell Telephone Co., supra.

[5] We are of the opinion that the evidence in the case at bar warrants the conclusion that the general work of building the hopper had, a week before the casualty, been completed for the purpose for which it was originally designed; that it had been accepted and adopted by the master; that the addition to it, in making which the plaintiff was engaged when injured, was an afterthought supplementary to the original design and constituted a separate and distinct piece of work, for the performance of which the master was required to furnish a safe place in the hopper itself. If it be assumed that the necessity for this addition was not suggested or demonstrated for many weeks afterwards, could it be successfully maintained that the master could with impunity send his workman on a defective structure to make it simply because that workman had participated in the original construction? We think not. After the original design had been executed, surely the element of time is unimportant. The nature of the additional work, considered in connection with the time when it was required to be done, is important.

[6] Whether the plaintiff was negligent in not observing the insecure railing, or in pressing against the railing unduly, or in doing the work in the manner in which he did, and whether the defendant was negligent in failing to provide a reasonably safe place to work, surrounding the platform of which was the railing described, presented questions of fact for the jury.

I advise an affirmance of the judgment and order, with costs. All concur.